Milton J. Bailey, Appellee, v. Henry B. Welch, Appellant.

Gen. No. 41,223.

Opinion filed November 20, 1940. Rehearing denied December 11, 1940.

JAMES F. LYONS, of Chicago, for appellant; ELWYN E. LONG, of Chicago, of counsel.

GUY C. GUERINE, of Melrose Park, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Defendant Henry B. Welch brings this appeal from a judgment entered against him in the circuit court for $500. The cause was tried before a judge and

jury, the jury returning a verdict for $1,450, upon which a remittitur for $950 was, on motion of plaintiff, entered which left a balance of $500, being the amount of the judgment entered by said court.

From the record before us it appears that in May, 1937, plaintiff herein was engaged in the trucking and excavating business in Cook county; that he employed one Jacob Artman and that State highway maintenance police officer John Howe, badge 374, attached to district 4, took said Artman to the Cook county police station for moving a crane and boom from one job to another without automobile license plates on said vehicle.

The record further shows that the defendant Henry B. Welch is a police magistrate and on May 26, 1937, the said Artman appeared before him in his courtroom in the village of Alsip, Cook county, Illinois, upon the defendant's warrant by police officer John Howe. On oral argument we were informed that said Howe is now in the penitentiary.

The record further shows that plaintiff Bailey had leased the machine from B & J Tractor & Trucking Service, a Michigan corporation, and that Artman was the operator thereof; that said Bailey was also brought before Welch, the justice of the peace, and without any charge against him was fined $25, being a penalty of $15, constable fees $5 and court costs $5, although the statute only permits a charge of $2 on a plea of guilty; that the justice of the peace then issued a mittimus and caused the plaintiff to be locked in the county jail where he was kept for about 24 hours; that the justice of the peace then "stayed" the mittimus and let plaintiff out of jail. Just how this action and procedure was authorized and conducted does not appear.

The evidence further shows that solicitation was made of Bailey to pay money to various constables during the summer and the proceedings were then continued until September by defendant, when the

plaintiff was again arrested and taken to defendant's house where he was kept without food, except for some tea and bread, from approximately 7 a.m. until 11 p.m.

From the transcript of the record before us it is difficult to follow the events in sequence. No complaint against Bailey was made by anyone before the justice of the peace. The summons was issued, according to the transcript, by the police officer Howe and not by the justice of the peace. The justice of the peace had a so-called hearing, at which the plaintiff appeared. The transcript of the defendant, as justice of the peace, does not disclose that a plea of either guilty or not guilty was entered, although the justice of the peace, defendant here, testified that plaintiff did both. No witnesses were sworn, no jury waiver required and no evidence was produced. As a result of the action of the justice of the peace, the plaintiff was at one time committed to the county jail where he was fingerprinted, required to scrub floors and remained in jail for approximately 24 hours. Aside from the personal suffering and humiliation which he underwent because of his incarceration, plaintiff was deprived of securing a contract on which he would have made a profit of $1,000. It is difficult to believe that in a civilized community there still remains those who, under the guise and sacred name of justice, will perpetrate such outrages. Under the guise of judicial procedure, the plaintiff was harassed by different constables and the justice of the peace, endeavoring to force plaintiff to pay certain money to them. We shall not say it was a conspiracy to extort money, but if these defendants had been engaged in such a nefarious occupation they would have acted just as the evidence shows was done in this case.

The facts in this case do not appear to be disputed and we think the jury was well within its rights in fixing the amount of damages. The trial judge, however,

was of the opinion that the verdict was too high and at his suggestion the plaintiff in this case entered a remittitur for $950 and the court thereupon entered judgment for the sum of $500 and costs. There being no cross errors on behalf of plaintiff, assigning this action of the trial judge as prejudicial, we are bound to this extent by the record.

Nothing is to be gained by a further discussion of this sordid matter. We think the defendant was quite fortunate because of the meager amount of the judgment.

For the reasons herein given the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and BURKE, J., concur.